B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS Philip J. Sirlin, pro se<br><br>(914) 666-2159 | DEFENDANTS<br><br>Ken Levy and Sharon Levy |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** Dominick Rendina<br>Dominick Rendina Attorney at Law<br>500 West Putnam Avenue, Suite 400<br>Greenwich, Connecticut 06830<br>(203) 542-7210 |
| **PARTY** (Check One Box Only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee | **PARTY** (Check<br>☑ Debtor     ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTORS' DISCHARGE PURSUANT
TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE. Defendants-Debtors, with on-going bankruptcy filings and
a large number of unpaid debts, induced Plaintiff to rent a house to them by offering to agree in writing that they
would not seek to have the rent discharged in the on-going or future bankruptcy filings.

### NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

| **FRBP 7001(1) – Recovery of Money/Property**<br>☐ 11-Recovery of money/property - §542 turnover of property<br>☐ 12-Recovery of money/property - §547 preference<br>☐ 13-Recovery of money/property - §548 fraudulent transfer<br>☐ 14-Recovery of money/property - other | **FRBP 7001(6) – Dischargeability (continued)**<br>☐ 61-Dischargeability - §523(a)(5), domestic support<br>☑ 68-Dischargeability - §523(a)(6), willful and malicious injury<br>☐ 63-Dischargeability - §523(a)(8), student loan<br>☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation<br>       (other than domestic support)<br>☐ 65-Dischargeability - other |
|---|---|
| **FRBP 7001(2) – Validity, Priority or Extent of Lien**<br>☐ 21-Validity, priority or extent of lien or other interest in property | |
| **FRBP 7001(3) – Approval of Sale of Property**<br>☐ 31-Approval of sale of property of estate and of a co-owner - §363(h) | **FRBP 7001(7) – Injunctive Relief**<br>☐ 71-Injunctive relief – imposition of stay<br>☐ 72-Injunctive relief – other |
| **FRBP 7001(4) – Objection/Revocation of Discharge**<br>☑ 41-Objection / revocation of discharge - §727(c),(d),(e) | **FRBP 7001(8) Subordination of Claim or Interest**<br>☐ 81-Subordination of claim or interest |
| **FRBP 7001(5) – Revocation of Confirmation**<br>☐ 51-Revocation of confirmation | **FRBP 7001(9) Declaratory Judgment**<br>☐ 91-Declaratory judgment |
| **FRBP 7001(6) – Dischargeability**<br>☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims<br>☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud<br>☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny | **FRBP 7001(10) Determination of Removed Action**<br>☐ 01-Determination of removed claim or cause |
| | **Other**<br>☐ SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.<br>☐ 02-Other (e.g. other actions that would have been brought in state court<br>       if unrelated to bankruptcy case) |
| **(continued next column)** | |

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $  **$152,422.00 plus interest** |

Other Relief Sought _____ **Plaintiff respectfully requests that this Court enter a judgment determining**
that the debt reflected in the Judgment entered in favor of Plaintiff against the Defendants-Debtors,
dated July 20, 2015, for the sum of $152,422.00 is non-dischargeable under Bankruptcy Code § 523.

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR   Ken Levy and Sharon Levy | BANKRUPTCY CASE NO.   19-50289 jam | |
| DISTRICT IN WHICH CASE IS PENDING   District of Connecticut | DIVISION OFFICE   Bridgeport | NAME OF JUDGE   Chief Judge Julie A. Manning |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE    May 29, 2019 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)   Philip J. Sirlin, pro se | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Philip J. Sirlin, Pro Se
7 Kisco Park Drive
Mount Kisco, New York 10549-3908
914-666-2159

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

In re:                                          Chapter 7

KEN LEVY and
SHARON LEVY

                    Debtors,                     Case No. 19-50289 (JAM)

---

PHILIP J. SIRLIN, Pro Se

                    Plaintiff,                   Adversary Proceeding
                                                 No.
        Vs.

KEN LEVY and                                     (Hearing date to be set
SHARON LEVY                                       by summons)

                    Defendants.

---

**COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY
AND OBJECTING TO DEBTORS' DISCHARGE PURSUANT TO
<u>SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE</u>**

1

Plaintiff-Creditor Philip J. Sirlin ("Plaintiff") as and for his Complaint against Defendants-Debtors Ken Levy and Sharon Levy ("Defendants-Debtors"), respectfully alleges:

## JURISDICTION

1. On March 4, 2019, the Defendants-Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the District of Connecticut.

2. On April 8, 2019, the Defendants-Debtors' duly noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code.

3. As of the date of this Complaint, the Defendants-Debtors have not been granted a discharge.

4. This Complaint is timely because the date by which a Complaint to determine dischargeability of a debt expires on June 7, 2019.

5. This is an adversary proceeding in which the Plaintiff is objecting to the Defendants-Debtors' discharge under Bankruptcy Code § § 727(a)(3) and is seeking a determination as to the dischargeability of the debt owed by the Defendants-Debtors to Plaintiff under Bankruptcy Code §§523(a)(2)(A), 523(a)(4), and 523(a)(6).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § § 523 and 727.

7. This case is a core proceeding pursuant to 28 U.S.C, § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

8. Plaintiff is an individual who resides at 7 Kisco Park Drive, Mount Kisco, New York 10549-3908.

9. Plaintiff is a judgment creditor of the Defendants-Debtors.

10. Defendants-Debtors are the Debtors in the above-captioned case.  At the date of the issuance of the Judgment, July 20, 2015, Defendants-Debtors resided at 10 Kisco Park Drive, Mount Kisco, New York 10549-3908.  The bankruptcy filing shows the address of Ken Levy to be 2400 Yorktown Street, Apartment #58, Houston, Texas 77056, and the address of Sharon Levy to be 50 Forest Street, Apartment 1620, Stamford, Connecticut 06901.

## 10 Kisco Park Drive, Mount Kisco, New York

11. Plaintiff owns only one rental dwelling, a single-family house at 10 Kisco Park Drive, Mount Kisco, New York 10549-3908 ("House").  This property constitutes a major part of Plaintiff's total assets.

3

12. Defendants-Debtors wished to rent House from Plaintiff to use as a residence for themselves and their children.

13. Defendants-Debtors had an extremely poor credit history, as evidenced by the large number of items in their current bankruptcy filing.  The items in the current bankruptcy filing cover a wide range of years, from before Defendants-Debtors asked to rent the House from Plaintiff, up to the present time.

14. Defendants-Debtors told Plaintiff that they had never been evicted from a rental unit.  Plaintiff replied upon this statement in making the decision to rent to Defendants-Debtors in spite of their extremely poor credit history. Plaintiff has recently become aware from the records in the Justice Court of the Town of New Castle that this was not true; that in fact, Defendants-Debtors had been evicted from at least one other residence prior to renting the House from Plaintiff.

15. Defendants-Debtors stated that they did not have anyone who would co-sign the lease for them.

16. When Plaintiff was considering whether to rent the House to Defendants-Debtors, Defendants-Debtors advised Plaintiff that they had an on-going bankruptcy filing.

17. The current bankruptcy filing indicates that Defendants-Debtors had three incomplete bankruptcy filings, originally filed on May 13, 2005, September 26, 2005, and April 11, 2006.

18. Defendants-Debtors made the offer to Plaintiff, as an inducement to be accepted as tenants for the House, and to obtain the occupancy and services of the House, in spite of their large number of debts, large total amount of debt, and on-going bankruptcy filing, that they would agree, verbally and in writing in the lease, to never attempt to have any obligation in the lease discharged in a current or future bankruptcy filing.

19. After Defendants-Debtors offered that they would never attempt to have any obligation in the least discharged in a current or future bankruptcy filing, Defendants-Debtors and Plaintiff agreed on the following language, which was subsequently included in the lease for the House as Paragraph 35:

> "Tenants have advised Landlord that Tenants are parties to an on-going bankruptcy action or intend to be parties to a bankruptcy action in the future.  Tenants agree that they have not and will not attempt to have any obligation stated in this Lease or this Attachment to Lease or any obligation to Landlord discharged or

5

amended in this bankruptcy action or in any future bankruptcy action, insolvency action, or similar action. Tenants must continue to pay rent, damages, losses, and expenses without offset."

20. Plaintiff relied upon this offer by Defendants-Debtors in Plaintiff's decision to permit Defendants to rent and occupy the House.

21. Defendants-Debtors fell substantially behind in the rent.

22. Many checks that Defendants-Debtors gave to Plaintiff for rent were returned by the Defendants-Debtors' bank for Not Sufficient Funds (NSF).

23. At multiple times, Defendants-Debtors agreed to written payment plans to catch up on past due rent, including payment plans that were written into leases. Defendants always defaulted on these payment plans.

24. Defendants-Debtors asked Plaintiff to allow them to stay in the House until their children graduated from high school in the Chappaqua School District. These requests were always accompanied by a promise to pay, and Defendants-Debtors continually pointed out the provision in the lease that they would never ask to have the rent discharged.

25. Plaintiff relied on the agreement that the rent would eventually be paid, and did not attempt to evict Defendants-Debtors, so that Defendants-Debtors' children could graduate from their high school in Chappaqua.

26. After all of Defendants-Debtors' children had graduated and were in college, Defendants-Debtors began to pay almost no rent at all.

27. A settlement was reached, on July 16, 2015, between Plaintiff and Defendants-Debtors that the sum of $152,422.00 was due and owing for rental arrears through August 22, 2015.  Plaintiff and Defendants-Debtors were represented by counsel.  The settlement included the provision that Defendants would leave the House by August 23, 2015.  Defendants-Debtors left the House somewhat thereafter in September 2015.

28. A Stipulation of Settlement was submitted to the Justice Court of the Town of New Castle, New York.  On July 20, 2015, Town Justice Douglas M. Kraus issued a Judgment of Money Award for Non-Payment for the sum of $152,422.00.  A Warrant of Eviction, which was stayed until August 23, 2015, was also issued.

29. Plaintiff never received any payment whatsoever for the Judgment.  The Defendants-Debtors never offered any payment for the Judgment.

30. At approximately the time of the Judgment, Defendants-Debtors' wages were attached for an old debt, thereby preventing any attachment of wages by Plaintiff.  The old debt was apparently approximately $400,000. At the recent Creditors' Meeting, the Bankruptcy Trustee asked about the

reason for this debt.  Defendant-Debtor Ken Levy responded that the $400,000 debt was for accounting fees.

31. The Judgment for rental arrears was listed incorrected in the bankruptcy filing.  The amount listed in the bankruptcy filing is $147,972.00.  In fact, the original amount of the judgment is $152,422.00, no payment on the Judgment was ever made, and the original amount has been increasing at 9% per annum since July 20, 2015.  Also, although the amount of $152,422.00 was a settlement agreed to by Defendants-Debtors and Plaintiff, and the Judgment states that it was a settlement agreed to by the Defendants-Debtors and Plaintiff, the bankruptcy filing lists it as "disputed."

32. After Plaintiff regained possession of the House, Plaintiff discovered that tremendous damage had been done to the House.  Plaintiff believes that the amount and nature of the damage indicated that much of the damage was malicious and intentional.  The damage included:

    a.  Large, highly visible dents had been made in the stainless steel door of the refrigerator.

    b.  Literally all of the plastic parts in the refrigerator had been broken.

    c.  The refrigerator icemaker had been physically broken.

  d. A toilet bowl had been smashed.

  e. The central vacuum unit had been taken from the House.

  f. The dishwasher had been used without a door seal for an extended period of time, and the kitchen floor and the basement ceiling, walls, and carpeting had been destroyed by leaking water.

  g. Every towel rack and paper holder had been ripped from the walls.

  h. There was extensive damage to the walls of the House.

  i. The locks and frames of both the front and rear doors to the house had been broken.

  j. All of the kitchen and bathroom water faucets had been broken.

  k. Both whirlpool tubs had been severely abused and clogged, and required extensive repairs.

33. The cost of the repairs to the House exceeded $30,000.

34. Since Plaintiff had a Judgment, which was for rental arrears only, not including any late fees or damage to the House, for $152,422.00, for which Plaintiff had not been able to receive any payment, Plaintiff did not pursue an additional judgment for damage to the House.

35. Defendants-Debtors asked Plaintiff if they could purchase his 1998 Jeep Grand Cherokee.  Plaintiff offered the vehicle to Defendants for $3,000.

Defendants-Debtors accepted the price, and took possession of the vehicle. However, Defendants-Debtors never paid Plaintiff for the vehicle. Plaintiff now believes that Defendants-Debtors never intended to pay for this vehicle, and Plaintiff now believes that the taking of possession of the vehicle by the Defendants-Debtors was an act of larceny.

36. Plaintiff believes that the large number of debts, including both small and large debts, in the Bankruptcy Filing over a large number of years, including very recent debts, is evidence that the Defendants-Debtors have long been engaged in the practice of acquiring goods and services through false pretenses, false representations, actual fraud, or larceny.

**COUNT I – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE**

37. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 36 of this Complaint as if set forth at length herein.

38. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –

(2)  for money, property, services, or an extension, renewal, or

refinancing of credit, to the extent obtained by –

(A)  false pretenses, a false representation, or actual fraud, other

than a statement respecting the debtor's or an insider's financial

condition . . . .

39. All or part of the debt owed to Plaintiff, as evidenced by the Judgment

entered against the Defendants, is non-dischargeable as it is a debt for

money, property, services, or an extension, renewal, or refinancing of

credit, that was obtained by false pretenses, a false representation, or

actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

40. Defendants-Debtors used false pretenses and false representation to

Plaintiff to obtain the occupancy and services of the House, in spite of

Defendants-Debtors large number of debts, large total amount of debt,

and on-going bankruptcy filing, by offering to agree, verbally and in writing

in the lease, to never attempt to have any obligation in the lease

discharged in a bankruptcy filing.  Plaintiff relied upon this false pretense

and false representation in allowing the Defendants-Debtors to have the

occupancy and services of the House.

41. Defendants-Debtors used false pretenses and false representation to
Plaintiff to obtain the occupancy services of the House, in spite of
Defendants-Debtors large number of debts, large total amount of debt,
and on-going bankruptcy filing, by falsely stating that Defendants-Debtors
had never been evicted from a rental unit.  Plaintiff relied upon this false
pretense and false representation in allowing the Defendants-Debtors to
have the occupancy and services of the House.  Plaintiff has recently been
advised by the Justice Court of Town of New Castle that Defendants-
Debtors had been evicted from at least one residence in the Town of New
Castle prior to Defendants-Debtors renting the House from Plaintiff.

## COUNT II – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

42. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1
through 41 of this Complaint as if set forth at length herein.

43. Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)
of this title does not discharge an individual debtor from any debt –

(4)  for fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny . . . .

44. All or part of the debt owed to Plaintiff, as evidence by the Judgment

entered against the Defendants-Debtors, is non-dischargeable as it is a

debt for fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny within the meaning of the Bankruptcy Code §

523(a)(4).

## COUNT III – NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

45. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1

through 44 of this Complaint as if set forth at length herein.

46. Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

(a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)

of this title does not discharge an individual debtor from any debt

–

(6)  for willful and malicious injury by the debtor to another entity or

to the property of another entity . . .

13

47. All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for willful and malicious injury caused by the Defendants-Debtors within the meaning of Bankruptcy Code § 523(a)(6).

## COUNT IV – OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

48. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 47 of this Complaint as if set forth at length herein.

49. Bankruptcy Code § § 727(a)(3) provides that:

(a) The court shall grant the debtor a discharge, unless . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

50. The Defendants-Debtors, in their operation of their various businesses, including Combustion Marketing, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the Defendants-

Debtors' financial condition or business transactions might be

ascertained.

51. By virtue of the foregoing, the Defendants-Debtors' discharge should be

denied under Bankruptcy Code § 727(a)(3).

WHEREFORE, Plaintiff respectfully requests that this Court enter a

judgment determining that the debt reflected in the Judgment entered in

favor of Plaintiff against the Defendants-Debtors, dated July 20, 2015, for the

sum of $152,422.00, is non-dischargeable under Bankruptcy Code § §

523(a)(2)(A), 523(a)(4), and 523(a)(6) or, in the alternative, denying the

Defendants-Debtors discharge under Bankruptcy Code § 727(a)(3), and

granting Plaintiff such other and further relief as this Court may deem just and

proper.

Dated:   May 29, 2019

Philip J. Sirlin, Pro Se, Plaintiff
7 Kisco Park Drive
Mount Kisco, New York 10549-3908
(914) 666-2159

15

Our File No: 18787

**JUSTICE COURT OF THE TOWN OF NEW CASTLE**
**COUNTY OF WESTCHESTER**

Court Index No: 15070164

-------------------------------------------------------------------X

PHILIP J. SIRLIN,

~ against ~                    Petitioner,

KENNETH S. LEVY & SHARON M. LEVY
*"JOHN DOE 1 – 10 & *JANE DOE 1 – 10"
10 KISCO PARK DR  (HOUSE)
MOUNT KISCO NY 10549,

                                               Respondents.

-------------------------------------------------------------------X

## Judgment of Money Award for Non-Payment

**JUDGMENT for Non-Payment** is hereby rendered in favor of Petitioner/Landlord

PHILIP J. SIRLIN
Conducting business at  10 KISCO PARK DR  (HOUSE), MOUNT KISCO NY 10549

   **A NOTICE OF PETITION** containing a notice of demand for judgment for rent due, together with the petition, having been duly filed in the office of the Clerk of this Court, and proof of service of said notice of petition and petition having been duly filed within three days after service of said papers and it appearing that the Respondents/Tenants having been duly served with the notice of petition and petition, and the notice of petition having been made returnable before the Court on July 16, 2015 at 6:30 p.m. and that the Respondents/Tenants having appeared and answered **and having entered into a written stipulation with Counsel** at the time and place designated in the notice of petition

   **NOW ON MOTION** OF STEPHEN P. DEWEY, ESQ., Attorney for Petitioner, it is

   **ADJUDGED**  that possession of the premises described in the petition be awarded to the Petitioner/Landlord with the costs of this proceeding; and that

   Petitioner/Landlord PHILIP J. SIRLIN, conducting business at 10 KISCO PARK DR (HOUSE), MOUNT KISCO NY 10549
   do recover of Respondents/Tenants **KENNETH S. LEVY & SHARON M. LEVY** residing at 10 KISCO PARK DR (HOUSE), MOUNT KISCO NY 10549 the sum of $152.422.00 the amount determined to be due the Petitioner/Landlord for rent, per written stipulation amounting in all to the sum of $152.422.00, and that the Petitioner/Landlord have execution therefore.

   **ADJUDGED**  that a Warrant of Eviction issue, such issuance and enforcement therein be stayed to and including the **23rd day of August, 2015.**

DATED: July 20, 2015

                          ENTER

                          _Douglas M. Kraus_
                          HON. DOUGLAS M. KRAUS, Town Justice
                          Justice Court of the Town of New Castle

JUDGMENT ENTERED IN ACCORDANCE WITH THE FOREGOING:

DATED: 07/20/15

                          _Dianne DiCarlo_
                          Clerk of the Justice Court of the Town of New Castle

Our File #: 12787

JUSTICE COURT OF THE TOWN OF CORTLANDT MANOR
COUNTY OF WESTCHESTER

NEW CASTLE
DATE: 07/14/15

Court Index No: 15070164

-------------------------------------------x

PHILIP J. SIRLIN,

Petitioner/Landlord,

~ against ~

KENNETH S. LEVY & SHARON M. LEVY,

Respondents/Tenants,

**Stipulation of Settlement**

The parties understand that each party has the right to a trial, the right to see a Judge at any time and the right not to enter into a stipulation of settlement. However, after a review of all the issues, the parties agree that they do not want to get to trial and instead agree to the following:

IT IS STIPULATED AND AGREED between the Petitioner/Landlord (hereinafter "Petitioner") and the Respondent(s)/Tenant(s) (hereinafter "Respondents") that the above entitled matter is settled on the following terms and conditions:

1. Parties hereby consent to the jurisdiction of this Court, and enter into this Stipulation willingly and without duress.

2. The Respondent's admit and acknowledge Petitioner's allegations set forth in the underlying Petition in this action, and that the Petition is amended and the sum of $152,422.00 for rental arrears through August 22, 2015, shall be due and owing.

3. The Respondents agree and consent to both:
   1) Judgment of Possession and Warrant shall issue with a stay through August 22, 2015, and
   2) Money Judgment in the amount of $152,422.00, the issuance and entry therein stayed until August 23, 2015.  *in the event they fail such*

4. The Respondents shall vacate the premises on or before August 22, 2015. Respondents agree to leave the premises in a broom clean condition. Upon vacatur Respondents shall contact Petitioner directly to turn over all keys to the subject premises. Respondents understand that failure to vacate the premises on or before August 22, 2015, Petitioner may commence eviction proceedings, including the issuance and service of the Warrant with 72-Hour Notice. Respondents understand that upon issuance of said Warrant, Respondents may be evicted thereafter.

5. It is further agreed that a facsimile copy or electronic signature of this Stipulation shall suffice as an original and may be filed without further notice.

Petitioner: Philip J. Sirlin                                    Respondents:

by: _____                          by: _____
STEPHEN P. DEWEY, ESQ.                              KENNETH J. LEVY, Pro se
Attorney for the Petitioner

                                                  by: _____
                                                      SHARON M. LEVY, Pro se

July 16, 2015                                     Shapiro Gettinger & Waldinger, LLP
DATE: 07/14/15                                    Attorneys for Respondents/Tenants
                                                  By: _____
                                                      Steven E. Waldinger

So Ordered: _____
Hon. Douglas M. Kraus

499 — House lease, plain English format, furnished or unfurnished, 7-04

© 2024 by BlumbergExcelsior, Inc., Publisher, NYC 10013
www.blumberg.com

# LEASE AGREEMENT

**The Landlord and Tenant agree to lease the Premises at the Rent and for the Term stated on these terms:**

**LANDLORD:**

Philip J. Sirlin

Address for Notices
7 Kisco Park Drive, Mount Kisco, NY

**TENANT:**

Kenneth S. Levy

Sharon M. Levy

10 Kisco Park Drive, Mount Kisco, NY

**Premises:** 10 Kisco Park Drive, Mount Kisco, New York 10549-3908

| Lease date: | Term One Year | Yearly Rent | $ 48,000.00 |
| June 30,    20 14 | beginning July 1,    20 14 | Monthly Rent | $ 4,000.00 |
| | ending June 30,    20 15 | Security | $ 3,800.00 |

### 1. Use

The Premises must be used to live in only and for no other reason. Only a party signing this Lease, spouse and children of that party may use the Premises.

### 2. Failure to give possession

Landlord shall not be liable for failure to give Tenant possession of the Premises on the beginning date of the Term. Rent shall be payable as of the beginning of the Term unless Landlord is unable to give possession. In that case rent shall be payable when possession is available. Landlord will notify Tenant as to the date possession is available. The ending date of the Term will not change.

### 3. Rent, added rent

The rent payment for each month must be paid on the first day of that month at Landlord's Address above. Landlord need not give notice to pay the rent. Rent must be paid in full and no amount subtracted from it. The first month's rent is to be paid when Tenant signs this Lease. Tenant may be required to pay other charges to Landlord under the terms of this Lease. They are to be called "added rent." This added rent is payable as rent, together with the next monthly rent due. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if it were a failure to pay rent.

The whole amount of rent is due and payable when this Lease is effective. Payment of rent in installments is for Tenant's convenience only. If Tenant defaults, Landlord may give notice to Tenant that Tenant may no longer pay rent in installments. The entire rent for the remaining part of the Term will then be due and payable.

### 4. Notices

Any bill, statement or notice must be in writing and delivered or mailed to the Tenant at the Premises and to the Landlord at the Address for Notices. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. Any notice must be sent by certified mail. Landlord must send Tenant written notice if Landlord changes the Address for Notices.

### 5. Security

Tenant has given Security to Landlord in the amount stated above. If Tenant fully complies with all the terms of this Lease, Landlord will return the security after the Term ends. If Tenant does not fully comply with the terms of this Lease, Landlord may use the Security to pay amounts owed by Tenant, including damages. If Landlord sells the Premises, Landlord may give the Security to the buyer. Tenant will look only to the buyer for the return of the Security.

### 6. Utilities and services

Tenant must pay for the following utilities and services when billed: gas, water, electric, fuel, telephone, gardening, exterminating**

cable television, Internet access, garbage collection, snow and ice removal, septic tank pumping, and other services itemized in the Attachment to Lease.

Maintenance service contracts shall be maintained, continued and paid for by Tenant. These charges will be added rent.

### 7. Furnishings

Tenant must pay for the following utilities and services when billed: gas, water, electric, fuel, telephone, gardening, exterminating**

cable television, Internet access, garbage collection, snow and ice removal, septic tank pumping, and other services itemized in the Attachment to Lease.

Maintenance service contracts shall be maintained, continued and paid for by Tenant. These charges will be added rent.

### 7.  Furnishings

If the Premises are furnished, the furniture and other furnishings are accepted "as is." If an inventory is supplied each party shall have a signed copy.

### 8.  Repairs, alterations

Tenant must keep, and at the end of the Term return the Premises and all appliances, equipment, furniture, furnishings and other personal property clean and in good order and repair. Tenant is not responsible for ordinary wear and damage by the elements. If Tenant defaults, Landlord has the right to make repairs and charge Tenant the cost. The cost will be added rent. Tenant must not alter, decorate, change or add to the Premises.

### 9.  Space "as is"

Tenant has inspected the Premises. Tenant states that they are in good order and repair and takes the Premises "as is."

### 10.  Care of Premises, grounds

Tenant shall keep the grounds neat and clean. Vehicles may be driven or parked only in driveways or in the garage.

*\*\*Add other utilities and services, if any.*

## 11. Fire, damage

Tenant must give Landlord immediate notice in case of fire or other damage to the Premises. Landlord will have the right to repair the damage within a reasonable time or cancel this Lease. If Landlord repairs, Tenant shall pay rent only to the date of the fire or damage and shall start to pay rent again when the Premises become usable. Landlord may cancel the Lease by giving Tenant 3 days' written notice. The Term shall be over at the end of the third day and all rent shall be paid to the date of the damage.

## 12. Liability

Landlord is not liable for loss, expense or damage to any person or property unless it is due to Landlord's negligence. Tenant must pay for damages suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. Tenant is responsible for all acts of Tenant's family, employees, guests and invitees.

## 13. Landlord's consent

If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

## 14. Assignment, sublet

Tenant may not sublet all or part of the Premises, or assign this Lease or permit any other person to use the Premises.

## 15. Landlord may enter, keys, signs

Landlord may at reasonable times, enter the Premises to examine, to make repairs or alterations, and to show it to possible buyers, lenders or tenants. Tenant must give to Landlord keys to all locks. Locks may not be changed or additional locks installed without Landlord's consent. Doors must be locked at all times. Windows must be locked when Tenant is out. Landlord may place the usual "For Rent" or "For Sale" signs upon the Premises.

## 16. Subordination

This Lease and Tenant's rights are subject and subordinate to all present and future (a) leases for the Premises or the land on which it stands, (b) mortgages on the leases or on the Premises or on the land, (c) agreements securing money paid or to be paid by the lender, under mortgages, and (d) terms, conditions, renewals, changes of any kind in and extensions of the mortgages or leases or Lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is subject and subordinate.

## 17. Condemnation

If all of the Premises is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Premises. If any part of the Premises is taken, Landlord may cancel this Lease on notice to Tenant setting forth a cancellation date not less than 30 days from the date of the notice. If the Lease is cancelled, Tenant must deliver the Premises to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant gives Landlord any interest Tenant might have to any part of the award and shall make no claim for the value of the remaining part of the Term.

## 18. Compliance with authorities

Tenant must, at Tenant's cost, promptly comply with all laws, orders, rules and directions of all governmental authorities, property owners associations, insurance carriers or Board of Fire Underwriters or similar group. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does Tenant must pay the increase as added rent.

## 19. Tenant's defaults and Landlord's remedies

**A.** Landlord may give 5 days written notice to Tenant to correct any of the following defaults:

1. Failure to pay rent or added rent on time.

2. Improper assignment of the Lease, improper subletting all or part of the Premises, or allowing another to use the Premises.

3. Improper conduct by Tenant or other occupant of the Premises.

4. Failure to fully perform any other term in the Lease.

**B.** If Tenant fails to correct the defaults in section A within the 5 days, Landlord may cancel the Lease by giving Tenant a written 3 day notice stating the date the Term will end. On that date the Term and Tenant's rights in this Lease automatically end and Tenant must leave the Premises and give Landlord the keys. Tenant continues to be responsible for rent, expenses, damages and losses.

**C.** If the Lease is cancelled, or rent or added rent is not paid on time, or Tenant vacates the Premises, Landlord may in addition to other remedies take any of the following steps:

1. Use dispossess, eviction or other lawsuit method to take back the Apartment, and

2. To the extent permitted by law, enter the Apartment and remove Tenant and any person or property.

**D.** If the Lease is ended or Landlord takes back the Premises, rent and added rent for the unexpired Term becomes due and payable. Landlord may re-rent the Premises and anything in it for any Term. Landlord may re-rent for a lower rent and give allowances to the new tenant. Tenant shall be responsible for Landlord's cost of re-renting. Landlord's cost shall include the cost of repairs, decorations, broker's fees, attorney's fees, advertising and preparation for renting. Tenant shall

the Premises.

**3.** Improper conduct by Tenant or other occupant of the Premises.

**4.** Failure to fully perform any other term in the Lease.

**B.** If Tenant fails to correct the defaults in section A within the 5 days, Landlord may cancel the Lease by giving Tenant a written 3 day notice stating the date the Term will end. On that date the Term and Tenant's rights in this Lease automatically end and Tenant must leave the Premises and give Landlord the keys. Tenant continues to be responsible for rent, expenses, damages and losses.

**C.** If the Lease is cancelled, or rent or added rent is not paid on time, or Tenant vacates the Premises, Landlord may in addition to other remedies take any of the following steps:

**1.** Use dispossess, eviction or other lawsuit method to take back the Apartment, and

**2.** To the extent permitted by law, enter the Apartment and remove Tenant and any person or property.

**D.** If the Lease is ended or Landlord takes back the Premises, rent and added rent for the unexpired Term becomes due and payable. Landlord may re-rent the Premises and anything in it for any Term. Landlord may re-rent for a lower rent and give allowances to the new tenant. Tenant shall be responsible for Landlord's cost of re-renting. Landlord's cost shall include the cost of repairs, decorations, broker's fees, attorney's fees, advertising and preparation for renting. Tenant shall continue to be responsible for rent, expenses, damages and losses. Any rent received from the re-renting shall be applied to the reduction of money Tenant owes. Tenant waives all rights to return to the Premises after possession is given to the Landlord by a Court.

## 20. Bankruptcy

If (1) Tenant assigns property for the benefit of creditors, (2) Tenant files a voluntary petition or an involuntary petition is filed against Tenant under any bankruptcy or insolvency law, or (3) a trustee or receiver of Tenant or Tenant's property is appointed, Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not fully dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset.

## 21. Correcting tenant's default

If Tenant fails to correct a default after notice from Landlord, Landlord may correct it for Tenant at Tenant's expense. The sum Tenant must repay to Landlord will be added rent.

## 22. Waiver of jury, counterclaim, set off

Landlord and Tenant waive trial by a jury in any matter which comes up between the parties under or because of this Lease (except for a personal injury or property damage claim). In a proceeding to get possession of the Premises, Tenant shall not have the right to make a counterclaim or set off.

**23. Written instructions**

Landlord has given or·may give written instructions about the care and use of the appliances, equipment and other personal property on the Premises. Tenant must obey the instructions.

**24. Illegality**

If any part of this Lease is not legal, the rest of the Lease will be unaffected.

**25. No waiver**

Landlord's failure to enforce any terms of this Lease shall not prevent Landlord from enforcing such terms at a later time.

**26. Quiet enjoyment**

Landlord agrees that if Tenant pays the rent and is not in default under this Lease, Tenant may peaceably and quietly have, hold and enjoy the Premises for the Term of this Lease.

**27. Successors**

This Lease is binding on all parties who lawfully succeed to the rights or take the place of the Landlord or Tenant.

**28. Representations, changes in Lease**

Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by and delivered to each party.

**29. Paragraph headings**

The Paragraph headings are for convenience only.

**30. Effective date**

This Lease is effective when Landlord delivers to Tenant a copy signed by all parties.

31.   Attachment to Lease

The Attachment to Lease, which is nine pages in length, is attached to and an integral part of this Lease.  If any provision of the Attachment to Lease that is valid, legal, and enforceable disagrees with any other provision of this Lease, the provision in the Attachment to Lease shall be the determining provision, and shall have precedence over any conflicting provision in any other part of this Lease.

32.   Total Amount Due

The total amount due from Tenants to Landlord for past due rent and current rent for the term of this Lease is $161,340 (one hundred sixty-one thousand three hundred forty dollars).  Tenants agree to pay this amount in full without offset or counterclaim.

This Lease and Attachment to Lease has been subscribed and sworn to (or affirmed) before me this _____7_____ day of ____7____, _2014_, by
                                           Date              Month        Year

_____          _____
Kenneth S. Levy, Tenant                Philip J. Sirlin, Landlord

_____
Sharon M. Levy, Tenant

_____          ┌─────────────────────────────┐
Signature of Notary Public             │  **CHRISTOPHER JOHN MCBRIDE** │
                                       │  Notary Public - State of New York │
                                       │  NO. 01MC6283804            │
                                       │  Qualified in Westchester County │
                                       │  My Commission Expires Jun 17, 2017 │
                                       └─────────────────────────────┘

**Signatures**    The parties have entered into this Lease on the date first above stated.

Kenneth S. Levy, Tenant

_____
Sharon M. Levy, Tenant

_____
Signature of Notary Public

```
CHRISTOPHER JOHN MCBRIDE
Notary Public - State of New York
NO. 01MC6283804
Qualified in Westchester County
My Commission Expires Jun 17, 2017
```

**Signatures**    The parties have entered into this Lease on the date first above stated.

LANDLORD:

_____
Philip J. Sirlin

WITNESS:

_____

TENANT:

_____
Kenneth S. Levy

_____
Sharon M. Levy

---

### EPA and HUD Lead Paint Regulations, Effective September 6, 1996[1]

Landlords must disclose known lead-based paint and lead-based paint hazards of pre-1978 housing to tenants.[2] Use the following BLUMBERG LAW PRODUCTS (800 LAW MART) to comply:

3140  Lead Paint Information Booklet     3141  Lead Paint Lease Disclosure Form

[1]December 6, 1996 for owners of 1 to 4 residential dwellings.
[2]Leases for less than 100 days, 0-bedroom units, elderly and handicapped housing (unless children live there) and housing found to be lead-free by a certified inspector are excluded.

Philip J. Sirlin
7 Kisco Park Drive
Mount Kisco, New York
10549-3908

**TO**

Kenneth S. Levy and
Sharon M. Levy
10 Kisco Park Drive
Mount Kisco, New York
10549-3908

# Lease

*Date* June 30, 2014 ............., 20......

*Expires* June 30, 2015 ............., 20......

*Payable* $4,000 monthly, as stated
in Lease, and Past Due Balance

# Attachment to Lease

Premises: 10 Kisco Park Drive, Mount Kisco, New York 10549-3908
Philip J. Sirlin, Landlord
Kenneth S. Levy and Sharon M. Levy, Tenants
Term of Lease: One Year, Beginning July 1, 2014 and Ending June 30, 2015

(33)     This Attachment to Lease, nine pages long and consisting of paragraphs 33 through 65, is attached to and an integral part of this Lease. If any provision of this Attachment to Lease that is valid, legal, and enforceable disagrees with any other provision of this Lease, the provision in this Attachment to Lease shall be the determining provision, and shall have precedence over any conflicting provision in any other part of the Lease.

(34)     If any provision of this Lease or this Attachment to Lease shall be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions of this Lease or this Attachment to Lease, which shall remain in full force and effect.

(35)     Tenants have advised Landlord that Tenants are parties to an on-going bankruptcy action or intend to be parties to a bankruptcy action in the future. Tenants agree that they have not and will not attempt to have any obligation stated in this Lease or this Attachment to Lease or any obligation to Landlord discharged or amended in this bankruptcy action or in any future bankruptcy action, insolvency action, or similar action. Tenants must continue to pay rent, damages, losses, and expenses without offset.

(36)     This Lease and this Attachment to Lease set forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of Tenants and Landlord that this Lease and this Attachment to Lease shall be the sole source of agreement of the parties, and, except to the extent a provision of this Lease or this Attachment to Lease is expressly prohibited or ineffective under the laws of the State of New York, or the laws of the United States, this Lease and this Attachment to Lease shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Lease or this Attachment to Lease is prohibited or otherwise ineffective under the laws of the State of New York, or the laws of the United States, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Lease and this Attachment to Lease effective under the laws of the State of New York and the laws of the United States. If the laws of the State of New York or the laws of the United States are subsequently amended or interpreted in such a way to make any provision of this Lease or this Attachment to Lease that was formerly invalid valid, such provision shall be considered to have been valid from the effective date of such interpretation or amendment.

Approved by Kenneth S. Levy _____ Sharon M. Levy _____ Philip J. Sirlin _____

Attachment to Lease page 1 of 9

(37)    This Lease and this Attachment to Lease replace all previous Leases and Attachments to Leases, except that the following amounts are agreed to as correct, accurate, precise, and complete by Landlord and each of the Tenants and are carried forward and included in this Lease and this Attachment to Lease:

    a.  The security deposit of $3,800 (three thousand eight hundred dollars), and,

    b.  The balance due from Tenants to Landlord of $112,855 (one hundred twelve thousand eight hundred fifty-five dollars) for past due rent as of June 30, 1014, as described in paragraph 58 below.

(38)    Tenants agree that they will not transfer money to another individual or entity to avoid payment of rent and that they will pay the rent due under this lease before any other debt or obligation.

(39)    Tenants may keep their current pets, two dogs, at the Premises. Tenants must obtain Landlord's approval any new or additional pets before they may enter or reside at the Premises. Tenants are responsible for any and all damage to the Premises including but not limited to house, shed, walls, floors, lighting, driveway, trees, plants, lawn, and grounds caused by pets. Tenants will be responsible for all costs of the repair of any damage caused by pets, and none of this damage will be considered acceptable or normal wear and tear. Tenants will be responsible for the extermination of any pests, such as fleas, from the house. Tenants will pay the cost and be responsible for the removal of any unauthorized animals from the house.

(40)    Tenants must pay for all utilities and services when billed, including but not limited to water, electricity, fuel oil, telephone, cable television, Internet access, garbage collection (currently $485.00 per annum), gardening, exterminating, chimney cleaning, septic tank pumping, maintenance of landscaping, security system, oil burner cleaning and maintenance, indoor cleaning, outdoor cleaning, comprehensive maintenance on appliances and heating system, carpet cleaning, and removal of snow and ice from the Premises. If Landlord makes any payment for any utilities or services, the amount of such payment shall be charged to Tenants as added rent. Tenants must pay any and all fees associated with false security system alarms.

(41)    Tenants must keep, and at the end of the Term return, the Premises and all appliances, equipment, furniture, furnishings, and other personal property clean and in good order and repair. Tenants are responsible for any and all damage to the Premises including but not limited to house, shed, walls, floors, lighting, driveway, trees, plants, lawn, and grounds, from any known or unknown cause whatsoever. Tenants' responsibility will be reduced by payments that Landlord receives from Landlord's insurance policy. If Tenants default, Landlord has the right to make repairs and charge Tenants the cost. The cost will be added rent. Tenants must not alter, decorate, change, or add to the Premises. Tenants must notify Landlord before any repairs are made. All repairs must be made in the manner determined by Landlord. Landlord may enter the Premises at any time whatsoever to make emergency repairs. All kitchen appliances, refrigerators, and air conditioners are the property of Landlord.

Approved by Kenneth S. Levy _____ Sharon M. Levy _____ Philip J. Sirlin _____

Attachment to Lease page 2 of 9

(42)     Landlord is currently in the process of subdividing the Premises. Tenants will permit the grounds to be entered at any reasonable time to facilitate the subdivision process. Tenants will permit any activity on the grounds that is part of the subdivision process, such as the digging of holes to perform tests. If the subdivision is granted during the term of this Lease, the Premises to which this Lease applies shall not change and will continue to include the entire property of approximately 0.85 acres.

(43)     Tenants acknowledge that Landlord has disclosed lead-based paint and lead-based paint hazards on the Premises, that Tenants are fully aware of the likelihood of lead-based paint on the Premises, and that Tenants are fully aware of the hazards of lead-based paint. Landlord has provided Tenants with Disclosure of Information on Lead-Based Paint and or Lead-Based Paint Hazards, which is attached to this Lease. Landlord has provided Tenants with the pamphlet *Protect Your Family from Lead in Your Home.*

(44)     Tenants will maintain the house at a temperature of not less than 55 degrees Fahrenheit. If Tenants fail to perform this obligation, Landlord may immediately enter the Premises and take whatever actions are necessary to maintain 55 degrees Fahrenheit. Tenants will be charged for all actions taken to maintain 55 degrees Fahrenheit as added rent.

(45)     Tenants may not cause any vendor, person, corporation, or other entity to impose a lien against the Premises. Tenants will be responsible for any and all liens, assessments, or fines that are assessed against the Premises.

(46)     Tenants have no authority to incur any debt or make any charge against Landlord, or grant any lien upon the Premises. Tenants have no right to contract for services or materials used for the improvement of the Premises.

(47)     Tenants must obey all laws and regulations of the Town of New Castle, Westchester County, and New York State, and must pay all fines or fees caused by Tenants failure to obey such laws. For example, but not limited to, Tenants must obey laws and regulations related to garbage recycling.

(48)     The shed, the boiler room in the northwest part of the basement, the storage room in the northeast part of the basement, the closet in the northeast corner of the room in the northwest part of the basement, and the garage are reserved for the exclusive use of Landlord. Landlord may receive mail at the Premises, and Landlord shares use of the mailbox at the Premises with Tenants.

(49)     The room in the northwest part of the basement contains a Steinway piano that is the property of Landlord. If Tenants wish to play the piano, or move it to another part of the house, Tenants may do so, but in this case, Tenants will be responsible for all costs of tuning the piano and all costs of repairing any damage that may result to the piano or the house.

(50)     The Premises shall be maintained by Tenants as a non-smoking residence, and Tenants shall not permit anyone to smoke at the Premises. Tenants will be responsible for the cost of removing any smell of smoke from the Premises.

(51)     The kitchen and bathrooms must be cleaned using Gel-Gloss®, a product that is sold by TR Industries of South Gate, California, and is available at Home Depot and other retailers. No other cleaning product may be used in the kitchen

and bathrooms.   If any other cleaning product is used, Tenants will be responsible for all degradation of the surfaces, and all costs of restoration.  If any other cleaning product is used, the degradation to the surfaces will be considered damage done by Tenants, and will specifically not be considered "normal wear and tear."  The whirlpool tubs in the bathrooms are particularly sensitive due to the nature of their surfaces and internal mechanisms.  Only clean water may be used in the tubs when the whirlpool mechanism is activated.  No soap, bath oil, bubble bath, or additive of any kind may be used when the whirlpool mechanism is operating.  The tub must be filled with clean water to two inches above all inlets and jets before the whirlpool mechanism is turned on.  The whirlpool mechanism must be turned off before the tub is drained.   The whirlpool mechanism will be damaged if operated without water for even a very short period of time.   The whirlpool tubs must be polished monthly with Gel-Gloss® (Bath and Shower).

(52)      Tenants will maintain the lawns, trees, and all plantings of any kind at the Premises.  Such maintenance shall include, but not be limited to, watering when necessary and lawful.  Tenants may not remove, or allow to be removed, any plant of any kind from the premises

(53)      The Premises are deemed to have been in perfect condition at the time of the beginning of the occupancy of the Premises by the Tenants, and any repairs or maintenance that may have become necessary during occupancy of the Premises by the Tenants prior to this lease are carried over to this Lease, and become obligations of Tenants under this Lease.  Tenants agree that they are responsible for all damage during this Lease or during their occupancy prior to this Lease, including, but not limited to, destruction of the large bush at the northeast corner of the house, damage to the toilet and bathroom on the lower level of the house, damage to the refrigerator door, and damage to screens and windows.   Tenants agree that this damage, and all other damage, will be repaired at Tenants' expense during the first three months of this Lease.  Repairs will be made under the supervision of the Landlord, and in the manner specified by the Landlord.

(54)      All payments made by Tenants to Landlord for obligations under this Lease will be credited first to added rent and any other special obligations, and second to monthly rent, to be applied to months in chronological order, as indicated in paragraph 58 below.

(55)      Landlord and each of the Tenants agree that the following Rent Record is correct, accurate, precise, and complete, and that as of June 30, 2014, Tenants owe Landlord $112,855 (one hundred twelve thousand eight hundred fifty-five dollars) for rent for the partial month January 2012, and the full months February 2012 through June 2014. Landlord and Tenants agree that this prior balance is an integral part of this Lease and this Attachment to Lease, and that rent in the amounts and for the months itemized below is due and payable by Tenants to Landlord in the same manner as rent for the months included in the term of this Lease and this Attachment to Lease.  Because of the past due balance, Tenants and Landlord agree that the total amount due by Tenants to Landlord under this Lease through the end of this Lease is $161,340 (one hundred sixty-one

Approved by Kenneth S. Levy _____  Sharon M. Levy _____  Philip J. Sirlin _____

Attachment to Lease page 4 of 9

thousand three hundred forty dollars).   Whenever this Lease or Attachment to Lease uses the term Tenants, this means each of the Tenants individually as well as both of the Tenants collectively.  The phase Each of the Tenants is used for emphasis, and has exactly the same meaning as Tenants.

(56)    Kenneth S. Levy and Sharon M. Levy, as Tenants, individually and jointly, assign to Philip J. Sirlin, as Landlord, all distributions of any kind from Capitalist Theads, LLC, and any other company, corporation, or other entity, until all current rent, past due rent, and added rent for the premises 10 Kisco Park Drive, Mount Kisco, New York has been paid in full.  This assignment of distributions of any kind survives the termination date of this Lease and continues until all current rent, past due rent, and added rent has been paid in full.

(57)    Kenneth S. Levy and Sharon M. Levy, as Tenants, individually and jointly, agree that if any current rent, past due rent, or added rent for the premises 10 Kisco Park Drive has not been paid by June 30, 2018, then any ownership interest which the Tenants may have in Capitalist Threads or any other company, corporation, or entity, will be sold at the highest available price, and the proceeds used solely to pay current rent, past due rent, and added rent, until all such rent has been paid in full.

(58)    The Tenants agree that the Rent Report immediately below is precise, accurate, correct and complete, and that they will not make any claim of any offset or counterclaim to the amount due shown below:

10 Kisco Park Drive Rent Record

| Month | Rent Due For Month | Payments Applied Date | Amount | Cumulative Rent Due |
|---|---|---|---|---|
| July-11 | $3,800 | | | $3,800 |
| 7/11 to 6/12 | $485 | | | $4,285 |
| garbage collection | | 2/8/2013 | $350 | $3,935 |
| | | 2/12/2013 | $400 | $3,535 |
| | | 2/15/2013 | $900 | $2,635 |
| | | 2/22/2013 | $1,000 | $1,635 |
| | | 3/7/2013 | $1,000 | $635 |
| | | 3/27/2013 | $635 | $0 |
| August-11 | $3,800 | | | $3,800 |
| | | 3/27/2013 | $365 | $3,435 |
| | | 4/4/2013 | $200 | $3,235 |
| | | 4/15/2013 | $1,200 | $2,035 |
| | | 4/23/2013 | $600 | $1,435 |
| | | 5/2/2013 | $1,435 | $0 |
| September-11 | $3,800 | | | $3,800 |
| | | 5/2/2013 | $165 | $3,635 |
| | | 5/17/2013 | $500 | $3,135 |

Approved by Kenneth S. Levy _____  Sharon M. Levy _____  Philip J. Sirlin _____

Attachment to Lease page 5 of 9

| | | | |
|---|---|---|---|
| | | 5/20/2013 | $500 | $2,635 |
| | | 6/4/2013 | $400 | $2,235 |
| | | 6/10/2013 | $800 | $1,435 |
| | | 6/18/2013 | $500 | $935 |
| | | 7/1/2013 | $350 | $585 |
| | | 7/24/2013 | $500 | $85 |
| | | 8/19/2013 | $85 | $0 |
| October-11 | $3,800 | | | $3,800 |
| | | 8/19/2013 | $915 | $2,885 |
| | | 9/9/2013 | $900 | $1,985 |
| | | 10/4/2013 | $500 | $1,485 |
| | | 10/4/2013 | $450 | $1,035 |
| | | 10/30/2013 | $500 | $535 |
| | | 11/5/2013 | $300 | $235 |
| | | 11/7/2013 | $200 | $35 |
| | | 11/15/2013 | $35 | $0 |
| November-11 | $3,800 | | | $3,800 |
| | | 11/15/2013 | $415 | $3,385 |
| | | 12/4/2013 | $300 | $3,085 |
| | | 12/18/2013 | $300 | $2,785 |
| | | 12/18/2013 | $300 | $2,485 |
| | | 1/10/2014 | $800 | $1,685 |
| | | 2/3/2014 | $500 | $1,185 |
| | | 2/3/2014 | $150 | $1,035 |
| | | 2/3/2014 | $300 | $735 |
| | | 2/21/2014 | $700 | $35 |
| | | 3/14/2014 | $35 | $0 |
| December-11 | $3,800 | | | $3,800 |
| | | 3/14/2014 | $1,365 | $2,435 |
| | | 3/21/2014 | $600 | $1,835 |
| | | 4/11/2014 | $500 | $1,335 |
| | | 5/2/2014 | $1,000 | $335 |
| | | 5/30/2014 | $335 | $0 |
| January-12 | $3,800 | | | $3,800 |
| | | 5/30/2014 | $665 | $3,135 |
| | | 6/5/2014 | $250 | $2,885 |
| | | 6/12/2014 | $300 | $2,585 |
| | | 6/24/2014 | $900 | $1,685 |
| February-12 | $3,800 | | | $5,485 |
| March-12 | $3,800 | | | $9,285 |
| April-12 | $3,800 | | | $13,085 |
| May-12 | $3,800 | | | $16,885 |

Approved by Kenneth S. Levy _____ Sharon M. Levy _____ Philip J. Sirlin _____

Attachment to Lease page 6 of 9

| | | |
|---|---|---|
| June-12 | $3,800 | $20,685 |
| July-12 | $3,800 | $24,485 |
| 7/12 to 6/13 | $485 | $24,970 |
| garbage collection | | $24,970 |
| August-12 | $3,800 | $28,770 |
| September-12 | $3,800 | $32,570 |
| October-12 | $3,800 | $36,370 |
| November-12 | $3,800 | $40,170 |
| December-12 | $3,800 | $43,970 |
| January-13 | $3,800 | $47,770 |
| February-13 | $3,800 | $51,570 |
| March-13 | $3,800 | $55,370 |
| April-13 | $3,800 | $59,170 |
| May-13 | $3,800 | $62,970 |
| June-13 | $3,800 | $66,770 |
| July-13 | $3,800 | $70,570 |
| 7/13 to 6/14 | $485 | $71,055 |
| garbage collection | | $71,055 |
| August-13 | $3,800 | $74,855 |
| September-13 | $3,800 | $78,655 |
| October-13 | $3,800 | $82,455 |
| November-13 | $3,800 | $86,255 |
| December-13 | $3,800 | $90,055 |
| January-14 | $3,800 | $93,855 |
| February-14 | $3,800 | $97,655 |
| March-14 | $3,800 | $101,455 |
| April-14 | $3,800 | $105,255 |
| May-14 | $3,800 | $109,055 |
| June-14 | $3,800 | $112,855 |
| July-14 | $4,000 | $116,855 |
| 7/14 to 6/15 | $485 | $117,340 |
| garbage collection | | $117,340 |
| August-14 | $4,000 | $121,340 |
| September-14 | $4,000 | $125,340 |
| October-14 | $4,000 | $129,340 |
| November-14 | $4,000 | $133,340 |
| December-14 | $4,000 | $137,340 |
| January-15 | $4,000 | $141,340 |
| February-15 | $4,000 | $145,340 |
| March-15 | $4,000 | $149,340 |
| April-15 | $4,000 | $153,340 |
| May-15 | $4,000 | $157,340 |

Approved by Kenneth S. Levy            Sharon M. Levy            Philip J. Sirlin

Attachment to Lease page 7 of 9

June-15        $4,000                          $161,340

(59)    As stated in Paragraph 19, Tenants will be in default of this Lease due to failure to pay rent or added rent on time if:

    a. Tenants fail in any calendar month to pay rent of $4,000 in addition to any added rent, or,

    b. The past due balance is greater than the level on June 30, 2014, which was $112,855 (one hundred twelve thousand eight hundred fifty-five dollars), or,

    c. Tenants fail to pay added rent within 30 days of request by Landlord, or,

    d. Tenants fail to reduce the past due balance as described in Paragraph 58 to $100,000 (one hundred thousand dollars) by September 1, 2014.

(60)    The past due balance, which was $112,855 (one hundred twelve thousand, eight hundred fifty-five dollars) as of June 30, 2014, is due and payable immediately. Tenants agree that Landlord may demand payment of the past due balance or any part thereof at any time. Because of Landlord's offer of this Lease to Tenants in spite of the very large past due balance, Tenants agree that Tenants will pay any and all of Landlord's expenses that are incurred to collect the past due balance, both during the term of this Lease and at any time in the future until the past due balance is paid in full.

(61)    If Tenants are in default of this Lease or this Attachment to Lease due to failure to pay rent or added rent on time, Landlord may at any time exercise Landlord's remedies as specified in **Paragraph 19. Tenant's defaults and Landlord's remedies**, of this Lease. Tenants and Landlord agree that the five-day notice described in subparagraph A of this provision will be delivered to Tenants by email to ken@combustionmarketing.com. The three-day notice described in subparagraph B of this provision will be delivered to Tenants in the manner prescribed by law.

(62)    Landlord's choice to delay exercising Landlord's remedies in this Lease shall not diminish in any way or manner Landlord's rights to exercise these remedies at a later date.

(63)    Notices from Landlord to Tenants that do not legally require personal service will be sent to Tenants by e-mail at ken@combustionmarketing.com.

(64)    All payments to Landlord will be made by tenants by deposit to Landlord's account at JP Morgan Chase bank, account of Philip J. Sirlin, routing number 021000021, account number 507001202765.

(65)    The Tenants consent to the jurisdiction of the Town Court in the Town of New Castle, New York, the County Court in the County of Westchester, the state courts in the State of New York, and the appropriate federal courts.

Approved by Kenneth S. Levy _____ Sharon M. Levy _____ Philip J. Sirlin _____

Attachment to Lease page 8 of 9

The parties agree that the amount due from Tenants to Landlord for past due rent and current rent for the term of this Lease is $161,340 (one hundred sixty-one thousand three hundred forty dollars) plus all added rent. Tenants agree to pay this amount in full without offset or counterclaim.

The parties have entered into this Lease, including this Attachment to Lease, for the period July 1, 2014 to June 30, 2015, on the date shown below.

Subscribed and sworn to (or affirmed) before me

this _____7th_____ day of ___July___ , __2014__ , by
       Date                   Month        Year

LANDLORD: _____
                    Philip J. Sirlin

TENANT: _____
                  Kenneth S. Levy

TENANT: _____
                  Sharon M. Levy

_____
Signature of Notary Public

CHRISTOPHER JOHN MCBRIDE
Notary Public - State of New York
NO. 01MC6283804
Qualified in Westchester County
My Commission Expires Jun 17, 2017

Approved by Kenneth S. Levy _____  Sharon M. Levy _____  Philip J. Sirlin _____

Attachment to Lease page 9 of 9

# Disclosure of Information on Lead-Based Paint and /or Lead-Based Paint Hazards

**Lead warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure**

(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

   (i)  ___■___ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

   The Premises was constructed before 1955, and painted many times, probably with lead-based paint. Lessor did not own the property during the time when lead-based paint was used, so Lessor does not have detailed information.

   (ii)  _____ Lessor has no knowledge of lead-based paint and /or lead-based paint hazards in the housing.

(b)  Records and reports available to the lessor (check (i) or (ii) below):

   (i)  _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead based paint hazards in the housing (list documents below).

   (ii)  ___■___ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgement** (initial)

(c)  _____ Lessee has received copies of all information listed above.

(d)  _____ Lessee has received the pamphlet Protect Your Family from Lead in Your Home.

**Agent's Acknowledgment** (initial)

(e)  _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they provided is true and accurate.

| | | |
|---|---|---|
| Lessor _____ 7/7/14 | Lessor _____ Sharan Leny 7/7/14 | |
| Lessee _____ 7/7/14 | Lessee _____ Date | |
| Agent _____ Date | Agent _____ Date | |

NYCHA 059.018 (11/00)